[Cite as *Williamson v. Farmers Ins. Co.*, 2026-Ohio-2530.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | |
|---|---|
| TYRONE WILLIAMSON | : |
| | : C.A. No. 30717 |
| Appellant | : |
| | : Trial Court Case No. 2024 CV 05663 |
| v. | : |
| | : (Civil Appeal from Common Pleas |
| FARMERS INSURANCE CO. | : Court) |
| | : |
| Appellee | : **FINAL JUDGMENT ENTRY &** |
| | : **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on July 2, 2026, the judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with the opinion.

Costs to be paid as follows: 50% by the appellant and 50% by the appellee.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

RONALD C. LEWIS, PRESIDING JUDGE

HUFFMAN, J., and HANSEMAN, J., concur.

T. TOD MOLLAUN, Attorney for Appellant
DAVID W. ORLANDINI and KAYLIN L. PAUL, Attorneys for Appellee

LEWIS, P.J.

{¶ 1} Plaintiff-appellant Tyrone Williamson appeals from the order of the Montgomery County Common Pleas Court granting summary judgment to Farmers Insurance Company ("Farmers Insurance") on his complaint. For the following reasons, we reverse the judgment of the trial court in part and affirm it in part and remand the cause for further proceedings consistent with this opinion.

I.     Facts and Course of Proceedings

{¶ 2} Williamson owned a duplex at 636 and 638 Oxford Avenue in Dayton. On October 31, 2024, Williamson filed a complaint in the Montgomery County Common Pleas Court against Farmers Insurance. According to the complaint, Farmers Insurance had wrongfully refused to reimburse Williamson for losses that occurred when someone vandalized his duplex. He used the duplex as two separate rental units. Around February 24, 2024, while there were no tenants renting the two units, "criminals illegally entered the duplex dwelling and committed vandalism, malicious mischief, burglary, theft, attempted theft, and other unlawful taking of property." Complaint, ¶ 3. Williamson alleged that, because of the February incident, he "incurred losses to personal property, loss of rents, dwelling damages, and other losses." *Id.* at ¶ 4. Following the February break-in, Williamson began making repairs to the duplex. *Id.* at ¶ 7. Before he completed the repairs, two additional break-ins occurred at the duplex in March and April 2024. *Id.* at ¶ 8, 13. Williamson stated that his insurance policy with Farmers Insurance entitled him to

compensation to help repair the damage caused by the three break-ins. He made claims under the policy, but Farmers Insurance did not approve all the claims. Therefore, Williamson requested that the trial court grant judgment against Farmers Insurance in an amount exceeding $25,000.

{¶ 3} Farmers Insurance filed an answer to the complaint, in which it denied all of Williamson's allegations. Farmers Insurance then deposed Williamson in March 2025. At his deposition, Williamson testified that he owned a duplex located at 636 and 638 Oxford Avenue, which he rented to tenants. At the time of the three break-ins at issue in his lawsuit, there were no tenants living in the duplex. Williamson identified the time periods before and after the break-ins during which tenants lived at the duplex. He stated that he used the duplex garage as a storage place for the equipment he used to work on the properties. When tenants lived at the duplex, they did not have access to the garage.

{¶ 4} Williamson could not recall if any furniture was in the rental units in February 2024 when the first break-in occurred but noted that he did not maintain any of his own furniture in the rental units. There were refrigerators and stoves in the rental units at the time of the February break-in, and they were not damaged. Williamson testified that the following losses occurred from the February 2024 break-in: (1) one door in unit 636 was damaged; (2) two doors from unit 638 were damaged; (3) one window in each unit was damaged; and (4) two Harbor Freight generators, a power washer, and hand tools were stolen from the garage. Williamson explained that the generators were for his personal use if there was a power outage, and he used the power washer to clean things. He agreed that the tools were for his personal use and tenants did not have access to them.

{¶ 5} A second break-in occurred in March 2024, and a third break-in occurred in April 2024. There was damage to the plumbing in unit 636, stuff was thrown onto the

3

ceiling, the hardwood floors were stained, and the outside fence was damaged. Williamson noted that an air conditioning window unit for unit 636, some wheels for his car, and a radio were all stolen. He also stated that there was some damage to the grass in his yard. Williamson replaced the garage door after the third break-in. He testified that he was unaware of any damage to the electrical systems, the gutters, or the laundry room.

{¶ 6} Williamson was paid approximately $17,000 by Farmers Insurance for the claim he made after the first break-in. This payment covered the damage to the garage door, five of the exterior doors, and two windows. Williamson testified as follows when he was asked what damages occurred at the property that were not covered by the $17,000 payment: "Two doors in 38, one in -- well, the side door in 36. Basement door in 36. Got some other damage to some of the other windows. The damage to the walls. The kitchen in 38 was -- walls were truly damaged. Some of the lighting in 38. The ceiling fan was damaged." Deposition Tr. 58. Williamson stated that he was also seeking lost rent under the policy. He explained that he had not sought reimbursement for the air conditioner, tools, generators, radio, car wheels, and power washer because the insurance adjuster told him that these times were excluded from coverage under the insurance policy.

{¶ 7} On October 6, 2025, Farmers Insurance filed a motion for summary judgment. It argued that its insurance policy with Williamson: (1) excluded coverage for lost rents because there were no tenants renting the two rental units at the time of the three break-ins; (2) excluded coverage for theft of personal property; and (3) excluded coverage for property damage due to vandalism and malicious mischief because the units were vacant for more than thirty consecutive days before the date of loss. Farmers Insurance supported its motion for summary judgment with a copy of the insurance policy, Williamson's discovery responses, and Williamson's deposition testimony.

4

**{¶ 8}** Williamson filed a memorandum in opposition to Farmers Insurance's motion for summary judgment. Relying primarily on the terms of the insurance policy and his deposition testimony, Williamson argued that there remained genuine issues of material fact to be determined. He also included pictures highlighting some of the damage to the duplex that occurred during the break-ins.

**{¶ 9}** On November 18, 2025, the trial court granted Farmers Insurance's motion for summary judgment, stating "Pursuant to Rule 56 of the Ohio Rules of Civil Procedure and for good cause shown, this Motion is hereby **GRANTED**. Accordingly, this Courts finds that Defendant Farmers is entitled to judgment as a matter of law, and Plaintiff's claims are dismissed." (Emphasis in original.) Williamson filed a timely notice of appeal.

II.    **There Is a Genuine Issue of Material Fact Whether the Dwelling Was Vacant at the Time of the Break-Ins**

**{¶ 10}** Williamson's first assignment of error states:

The trial court erred in granting summary judgment to Appellee where genuine issues of material fact existed as to whether the subject properties were "vacant" under the terms of the insurance policy.

a.  **Summary Judgment Relating to Claims Made Under An Insurance Policy**

**{¶ 11}** "When reviewing a decision granting summary judgment, we apply a de novo standard of review." *State ex rel. Armatas v. Plain Twp. Bd. of Zoning Appeals*, 2020-Ohio-2973, ¶ 8, citing *Esber Beverage Co. v. Labatt USA Operating Co., L.L.C.*, 2013-Ohio-4544, ¶ 9. Summary judgment is appropriate when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) "'it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for

5

summary judgment is made, that conclusion is adverse to that party.'"   *Id.*, quoting *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).   "The substantive law of the claim or claims being litigated determines whether a fact is 'material.'"   *Perrin v. Cincinnati Ins. Co.*, 2020-Ohio-1405, ¶ 29 (2d Dist.), citing *Herres v. Millwood Homeowners Assn., Inc.*, 2010-Ohio-3533, ¶ 21 (2d Dist.).

{¶ 12} The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated.   *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115 (1988).   "The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case."   *Dresher v. Burt*, 1996-Ohio-107, ¶ 18.   "Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims."   *Id.*   "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied."   *Id.*

{¶ 13} If the moving party satisfies its initial burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings.   *Id.* at ¶ 17, citing Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial.   *Id.*   "'If [the nonmoving party] does not so respond, summary judgment, if appropriate, shall be entered against [the nonmoving party].'"   *Id.*, quoting Civ.R. 56(E).   "'When reviewing a motion for summary judgment, a court must be careful not to weigh the evidence or judge the credibility of witnesses.   . . .   Instead, it must consider all of the evidence and reasonable inferences that can be drawn from the evidentiary materials in favor of the nonmoving party.'"   *McDaniel v. Daly*, 2008-Ohio-2080,

6

¶ 74 (2d Dist.), quoting *Cox v. Barsplice Products, Inc.*, 2001 WL 669336, *1 (2d Dist. June 15, 2001).

{¶ 14} "'An insurance policy is a contract whose interpretation is a matter of law.'" *Krewina v. United Specialty Ins. Co.*, 2023-Ohio-2343, ¶ 17, quoting *Sharonville v. Am. Emps. Ins. Co.*, 2006-Ohio-2180, ¶ 6. "We apply the de novo standard of review to a decision granting or denying summary judgment based on interpretation of an insurance contract." *Westfield Ins. Co. v. Hunter*, 2011-Ohio-1818, ¶ 12, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 1995-Ohio-214, ¶ 8.

{¶ 15} "We interpret insurance contracts with the same rules as other written contracts. That means that for an insurance contract, just like any other contract, a court has an obligation to give plain language its ordinary meaning and to refrain from rewriting the contractual agreement of the parties." (Cleaned up.) *Acuity v. Progressive Specialty Ins. Co.*, 2023-Ohio-3780, ¶ 11. "Ambiguous provisions in an insurance policy must be construed strictly against the insurer and liberally in favor of the insured." *Westfield Ins.* at ¶ 11, citing *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208 (1988), syllabus. "This is particularly true when considering provisions that purport to limit or qualify coverage under the policy." *Id.*, citing *Am. Fin. Corp. v. Fireman's Fund Ins. Co.*, 15 Ohio St.2d 171, 174 (1968). "Additionally, 'an exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded.'" (Emphasis in original.) *Sharonville* at ¶ 6, quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665 (1992).

{¶ 16} The party seeking coverage under an insurance contract bears the burden of showing both loss and coverage. *Id.* at ¶ 19. "The insurer bears the burden of proving

7

that an exclusion applies." *Blue Water Condominium Assn., Inc. v. Motorists Mut. Ins. Co.*, 2025-Ohio-772, ¶ 14 (6th Dist.), citing *Neal-Pettit v. Lahman*, 2010-Ohio-1829, ¶ 19.

### b. Coverage and Exclusions Under the Insurance Policy

{¶ 17} The "Coverage" section of Williamson's insurance policy with Farmers Insurance is divided into several subparts, including ones that address losses to the dwelling, other structures, personal property, and loss of rents. The policy states that Farmers Insurance provides "insurance only for insured losses that occur during the Policy Period shown on the Declarations Page unless the loss is excluded elsewhere in this policy." It is undisputed that Williamson's alleged losses occurred during the Policy Period of June 10, 2023, to June 10, 2024.

{¶ 18} Under the "Dwelling" subpart of the Coverage section, the policy states that Farmers Insurance insures the dwelling; materials and supplies on the premises for use in the construction, alteration, or repair of the dwelling; and the fixtures and appliances that are built in or permanently affixed to the dwelling. The policy further provides that Farmers Insurance insures "direct, abrupt, and accidental physical loss to the property described in Coverage A – Dwelling and Coverage B – Other Structures unless the loss is excluded elsewhere in the policy."

{¶ 19} Under the "Personal Property" subpart of the Coverage section, the policy states that Farmers Insurance insures furnishings and other household goods; appliances that are not built in or permanently affixed; and machinery, tools, and equipment. The policy further provides, "We insure this property only if it is on your premises and is usual and necessary for the residential occupancy of your dwelling." The policy also states that Farmers Insurance "insure[s] direct, abrupt, and accidental physical loss to the" personal property that was caused by "vandalism," "malicious mischief," or burglars. However, the

8

policy also provides that Farmers Insurance does not insure any loss of personal property "if your dwelling has been vacant for more than 30 consecutive days immediately before the loss." The policy notes, "A dwelling being constructed, altered, or repaired is not considered vacant."

{¶ 20} The "Loss of Rents" subpart of the Coverage section of the policy provides, "If an insured loss occurs at that part of your premises rented to others at the time of the loss, we will pay for your actual loss of rents." The "Your Additional Coverages" subpart provides that Farmers Insurance will pay "for loss to trees, shrubs, plants, and lawns on your premises" that was caused by vandalism, malicious mischief, or burglary.

{¶ 21} The insurance policy also contains a section entitled "Exclusions," in which Farmers Insurance lists losses that it does not insure. Relevant to this appeal, the policy states that Farmers Insurance does not insure: (1) "[l]oss caused by theft or attempted theft of construction materials and supplies used in the construction, alteration, or repair until your dwelling or other structure is finished or occupied" and (2) "[l]oss caused by vandalism or malicious mischief, or burglary, theft, attempted theft, or any other unlawful taking of property if your dwelling has been vacant for more than 30 consecutive days immediately before the loss." The policy again notes that "[a] dwelling being constructed, altered, or repaired is not considered vacant."

{¶ 22} Finally, a "Definitions" section at the beginning of the policy provides definitions for several terms. "Vacant" is not one of the defined terms in the "Definitions" section. However, a section of the insurance policy titled "REDUCTION IN COVERAGE WHEN VACANT OR UNOCCUPIED" provides definitions for "vacant" and "unoccupied." That section of the policy provides, in relevant part:

The following definitions are added:

**Vacant** means:

The absence of most of:

1. The furniture; and

2. Other items

needed for human occupancy as a dwelling.

**Unoccupied** means any dwelling without continual residence, even if it is fully

furnished.

(Emphasis in original.)

### c. Analysis

{¶ 23} The trial court granted summary judgment in favor of Farmers Insurance on Williamson's entire complaint. Williamson argues that the trial court erred in granting summary judgment because his duplex was not "vacant" under the terms of the insurance policy. According to Williamson, the evidence before the trial court "demonstrated ongoing cleaning, wall repair, carpet repair, and restoration efforts," which rendered the vacancy exclusions inapplicable. Appellant's Brief, p. 7.

{¶ 24} Farmers Insurance responds that Williamson "exaggerates the work he completed on the dwelling in an attempt to avoid the occupancy exclusion." Appellee's Brief, p. 7. According to Farmers Insurance, "[n]one of the cleaning tasks he completed rise to the level of construction, altering, or repairing the Properties entitling [Williamson] to avoid the barring effect of the exclusions in the Farmers policy." *Id.* Farmers Insurance further states that "the record demonstrates that [Williamson's] only efforts to prepare the Properties were to take the previous tenants' belongings to the dump and to clean the carpets." *Id.* at 9. Farmers Insurance concludes that "there is zero evidence that the

Properties were actively being constructed, altered, or repaired between the break-in incidents." *Id.* at 11.

{¶ 25} In making their appellate arguments regarding whether the duplex had been vacant for 30 consecutive days at the time of the break-ins, the parties focus on the provisions in the insurance policy that state "[a] dwelling being constructed, altered, or repaired is not considered vacant." The parties disagree over whether there is a genuine issue of material fact that Williamson was repairing the duplex at the time of the break-ins. As noted above, however, the policy contains a definition of "vacant" that goes beyond simply determining whether the dwelling is being repaired at the time of loss. The policy defines "vacant" as "The absence of most of: 1. The furniture; and 2. Other items needed for human occupancy as a dwelling." The record does not contain evidence establishing as a matter of law that the dwelling had an absence of *most of* the furniture *and* other items needed for human occupancy. Regarding furniture, the only evidence of record developed on that issue is Williamson's deposition testimony that he did not keep any of his own furniture in the two rental units. Further, the phrase "items needed for human occupancy as a dwelling" is nowhere defined in the policy. The phrase is subject to different interpretations. Ambiguous provisions must be construed strictly against the insurer and liberally in favor of the insured. *Westfield Ins.*, 2011-Ohio-1818, at ¶ 11. For example, stoves and refrigerators arguably are items needed for human occupancy as a dwelling. Williamson testified that his duplex contained stoves and refrigerators. Importantly, no evidence was presented to the trial court to establish that most of the items needed for human occupancy were absent from the duplex at the time of the break-ins. Therefore, there remains a genuine issue of material fact as to whether the rental units had been "vacant" for at least 30 consecutive days at the time of loss.

**{¶ 26}** During his deposition, Williamson identified several alleged losses that he suffered because of the three break-ins at his duplex. Relevant to this assignment of error, Williamson stated that doors, windows, walls, lighting, plumbing, carpet, a fence, a ceiling fan, and grass were damaged. Williamson also testified that a floor was stained and a ceiling had stuff thrown onto it. In seeking summary judgment on Williamson's request for reimbursement for these damages, Farmers Insurance relied on the vacancy exclusion. Because there remains a genuine issue of material fact as to whether the rental units were vacant for at least 30 consecutive days at the time of loss, we must conclude that the trial court erred by granting summary judgment on Williamson's complaint to the extent he sought reimbursement for these damages.

**{¶ 27}** The first assignment of error is sustained.

**III.     The Insurance Policy Excludes Coverage for Loss Due to the Theft of Stolen Personal Property**

**{¶ 28}** Williamson's second assignment of error states:

The trial court erred in granting summary judgment where genuine issues of material fact existed as to whether the stolen items constituted covered "materials and supplies" rather than excluded personal property.

**{¶ 29}** Williamson argues that the loss resulting from the theft of personal property from the duplex is covered by the insurance policy because the property constitutes material and supplies "for use in the construction, alteration, or repair of your dwelling." According to Williamson, the generators and tools were stored in the garage of the duplex, and the sole purpose of the garage was to store equipment to work on the properties. Farmers Insurance responds that Williamson's testimony established that the generator and tools were his personal property rather than supplies for use in the construction, alteration, or

12

repair of the duplex. Further, Farmers Insurance claims that a separate exclusion in the policy precludes coverage for loss caused by theft of construction materials and supplies "used in the construction, alteration, or repair until your dwelling or other structure is finished or occupied." Appellee's Brief, p. 14.

{¶ 30} We need not resolve the parties' dispute over whether Williamson was using the personal property at issue to repair his duplex before the property was stolen. Instead, the insurance policy contains two additional provisions relating to coverage for loss of personal property that are dispositive of this assignment of error. Under the section of the policy titled "SECTION I – Insured Perils," the policy provides the following regarding losses caused by vandalism or malicious mischief: "We do not insure: a. Any loss arising out of the theft or other unlawful taking from your premises of property, including, but not limited to, materials and supplies for use in construction." The policy then provides that Farmers Insurance does not insure against "theft" by burglars. The plain language of these two provisions establish that Farmers Insurance is not responsible for reimbursing Williamson for the loss of personal property stolen from Williamson's duplex. Therefore, the trial court did not err in granting summary judgment to Farmers Insurance on Williamson's complaint as far as it sought damages related to the *theft* of his personal property.

{¶ 31} The second assignment of error is overruled.

### IV. Williamson Is Not Entitled to Lost Rents

{¶ 32} The final category of damages Williamson identified in his deposition is lost rent. Coverage for lost rent is precluded by the plain, unambiguous language of the insurance policy, which states, in pertinent part: "If an insured loss occurs at that part of your premises rented to others at the time of the loss, we will pay for your actual loss of rents." Williamson conceded at his deposition and in his discovery responses that no

tenants were renting the two units in his duplex at the time of the three break-ins. Given that the premises were not rented to others at the time of the three break-ins, Williamson is not entitled to any lost rent under the plain terms of the insurance policy. Therefore, the trial court did not err in granting summary judgment to Farmers Insurance to the extent that Williamson's complaint sought damages for lost rent.

## V.    Conclusion

{¶ 33} Having sustained Williamson's first assignment of error, the trial court's judgment is reversed to the extent that it granted summary judgment on the entirety of Williamson's complaint. The trial court's judgment is affirmed to the extent that it granted summary judgment on Williamson's request for damages relating to lost rent and stolen personal property. This cause is remanded to the trial court for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

HUFFMAN, J., and HANSEMAN, J., concur.